2000 ND 86

**Tom KJELLAND, Plaintiff and Appellee,**

v.

**Susan KJELLAND, Defendant and Appellant.**

**No. 990292.**

Supreme Court of North Dakota.

April 25, 2000.

Wayne T. Anderson, Fargo, ND, for defendant and appellant.

Bonnie J. Askew, Fargo, ND, for plaintiff and appellee.

KAPSNER, Justice.

[¶ 1] Susan Kjelland appealed from a divorce judgment awarding custody of the parties' three children to Tom Kjelland. We hold the trial court did not clearly err in determining the best interests of the children favor awarding custody to Tom. We therefore affirm.

I

[¶ 2] Tom and Susan Kjelland married on September 6, 1980. During the marriage, they had three children: two sons whose dates of birth were June 12, 1985, and August 24, 1988, and a daughter whose birthdate was May 10, 1990.

[¶ 3] In 1981, Tom and Susan bought a convenience store in Valley City, and in 1986, they built a convenience store in Devils Lake. They bought a home near Valley City in 1988. During much of the marriage, Susan managed the Devils Lake store and spent time both in Devils Lake and Valley City, Tom managed the Valley City store, and the children lived at the parties' Valley City home and spent some time in Devils Lake. Tom and Susan both provided care for the children. The parties sold the stores in 1996.

[¶ 4] In 1995, Susan began a mail-order business with a friend in Devils Lake. The business has not been successful and has had little or no revenue since 1997. Susan bought a home in Devils Lake in May 1997.

[¶ 5] Tom and Susan separated in about September 1997, and Tom subsequently sued for a divorce. The trial court granted Tom interim custody of the parties' children and appointed a guardian ad litem

to provide a custody evaluation. The guardian ad litem recommended awarding custody to Tom.

[¶ 6] A trial was held in April 1999. The trial court analyzed the best interests of the children under N.D.C.C. § 14–09–06.2 to determine custody. The trial court noted the children indicated they want to live in their Valley City home; Tom expressed his intent and commitment to remain with the children in Valley City; Susan purchased a home in Devils Lake in 1997 and has rented a duplex in Valley City since January 1999 but has rarely spent a weekend in Valley City with the children; and Susan admitted she has limited employment opportunities in Valley City. The trial court also indicated both Tom and Susan are fit and proper parents; the children are doing well in Valley City; Susan has a lower propensity to encourage visitation; and the guardian ad litem recommended Tom be awarded custody. The trial court awarded custody to Tom and granted Susan liberal visitation. Judgment was entered on August 3, 1999. Susan appealed.

## II

[¶ 7] Susan contends the trial court erred in awarding custody to Tom. In determining custody, a trial court must consider the 13–factor best interests test set forth in N.D.C.C. § 14–09–06.2(1). *Ackerman v. Ackerman*, 1999 ND 135, ¶ 8, 596 N.W.2d 332. Section 14–09–06.2(1), N.D.C.C., provides:

For the purpose of custody, the best interests and welfare of the child is determined by the court's consideration and evaluation of all factors affecting the best interests and welfare of the child. These factors include all of the following when applicable:

a. The love, affection, and other emotional ties existing between the parents and child.

b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.

c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

d. The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.

e. The permanence, as a family unit, of the existing or proposed custodial home.

f. The moral fitness of the parents.

g. The mental and physical health of the parents.

h. The home, school, and community record of the child.

i. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

j. Evidence of domestic violence. . . .

k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. . . .

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

m. Any other factors considered by the court to be relevant to a particular child custody dispute.

[¶ 8] The trial court does not have to make specific findings for each factor but should consider all relevant factors. *Ackerman*, at ¶ 8. The custody determination is a finding of fact which will not be reversed unless it is clearly erroneous. *Nefzger v. Nefzger*, 1999 ND 119, ¶ 9, 595 N.W.2d 583. A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a

definite and firm conviction a mistake has been made. *Id.* A reviewing court will not retry a custody case or substitute its judgment for that of the trial court, if the trial court's determination is supported by evidence in the record. *Ackerman,* at ¶ 8.

[¶ 9] Here, the trial court acknowledged N.D.C.C. § 14–09–06.2 governed its decision and determined the best interests of the children required awarding custody to Tom. The trial court indicated factors (d), (e), and (m) favored Tom and factors (a), (b), (c), (f), (g), (j), (k), and (*l*) did not favor either parent. Under factors (h) and (i), the trial court noted the children were thriving in their home, school, and community environment in Valley City and had a clear preference to remain there.

[¶ 10] Under factors (d) and (e), the trial court acknowledged Tom's greater stability and commitment to parenting. A party's commitment to parenting is a valid factor to consider in determining custody. *Wetzel v. Wetzel,* 1999 ND 29, ¶ 8, 589 N.W.2d 889 (noting both parents' commitment to the child). Susan alleges the trial court erred in focusing on Tom's post-interim order caretaking. Relying on a parent's serving as primary caretaker pursuant to an interim order might be improper. *See* O'Kelly, Marcia, *Blessing the Tie that Binds: Preference for the Primary Caretaker as Custodian,* 63 N.D.L.Rev. 481, 542–44 (1987) (analyzing the "Time Frame for Identification of Primary Caretaker"). However, we need not decide that issue because the trial court did not rely on Tom's serving as the primary caretaker since the interim order. The trial court emphasized Tom's commitment to the children. A party's commitment to the children may be measured by a party's "noncaretaking" conduct which shows devotion to parenting. *See Wetzel,* at ¶¶ 8–9 (noting each parent was "genuinely devoted" and committed to parenting and had provided daily care and thus rejecting the appellant's contention "the trial court gave inadequate consideration to the fact [the child] ha[d] resided with her

since the parties separated"); *Landsberger v. Landsberger,* 364 N.W.2d 918, 919 (N.D.1985) (noting one parent "began seeking some social life outside of the home in evenings" during the last year of the marriage and the parent who was awarded custody "now focuses more upon the children"). Tom testified he placed the children and their needs ahead of other commitments. The guardian ad litem indicated "Tom clearly understood how important 'home' was to the children." The trial court noted "[f]rom the beginning of this proceeding, the children's father has made clear his intention and commitment to remain in Valley City and to live in the family home with the children." Susan decided to purchase a home in Devils Lake shortly before the parties separated and decided to remain employed in Devils Lake after the separation. The trial court noted Susan "claims that she is now willing to live in Valley City" but concedes she has few employment opportunities there. Based on the record, the trial court did not clearly err by indicating Tom has greater stability and commitment to parenting.

[¶ 11] Under factors (h) and (i), the trial court noted the children are doing well in Valley City, are involved in many activities, have excellent school records, and have made clear their preference to remain in Valley City. The children's report cards indicate they have received very good grades, mostly A's and a few B's. The guardian ad litem testified the children are doing well and wish to live in Valley City. The oldest child testified he participated in football, basketball, and golf. Although he did not express a preference as to which parent he wished to live with, he testified he wished to remain in the Valley City home. The middle child testified he participated in soccer and football. He also testified he wished to continue living in the Valley City home. The trial court accordingly did not clearly err in finding the children have done well in Valley City and wish to continue living there. In light of

Tom's greater stability and "commitment to remain in Valley City and to live in the family home with the children," the trial court's findings under factors (h) and (i) are consistent with awarding custody to Tom.

[¶ 12] Under factor (m), the trial court indicated Susan would be less likely to promote visitation if she was granted custody. A parent's willingness to foster a relationship with the other parent may be considered in determining the best interests of the children. *Gregg v. Gregg*, 1998 ND 204, ¶ 12, 586 N.W.2d 312. The trial court noted "[b]ased on her journal entries, Susan Kjelland has exhibited a tendency to be critical of Tom's parenting and suspicious of his actions in regard to the children." The trial court also pointed out Susan proposed a plan which granted her custody and limited Tom's visitation, while "Tom is willing to give Susan liberal visitation." [1] Based on the evidence, the trial court did not clearly err in determining Susan has a lower propensity to encourage visitation.

[¶ 13] Also under factor (m), the trial court noted the guardian ad litem's testimony and report which recommended Tom be awarded custody. A guardian ad litem's opinion is appropriate to consider in determining custody, and a trial court has discretion to assign the weight given to such evidence. *McAdams v. McAdams*, 530 N.W.2d 647, 650 (N.D.1995) (holding the trial court may assign the weight to be given to a custody investigator's opinion). The guardian ad litem indicated "Tom is and has been the primary caretaker of the three minor children"; "[s]tability has been provided for the children by their school, their custodial 'marital' home and Tom"; and "Tom is a fit and proper person to have custody of the three minor children with Susan a fit and proper person to have generous visitation." The trial court thus did not clearly err in noting the

guardian ad litem's opinion favored awarding custody to Tom.

[¶ 14] Challenging the trial court's neutral finding under factor (f), Susan contends the trial court failed to consider evidence of Tom's drinking which shows his lack of fitness to be a parent; however, the record does not support her contention. One witness, acquaintance Monilaws, testified Tom often left the children in his van while attending meetings at Monilaws' home and left such meetings intoxicated. Monilaws, however, conceded he blamed Tom, at least partly, for Monilaws' own divorce because of Tom's alleged involvement with Monilaws' ex-wife. Johnson, another acquaintance of the parties, testified Tom drinks in a social manner. The guardian ad litem reported "Susan could not relate any incidents where she felt the children had been placed in danger, or any predicaments that Tom had placed himself into because of his drinking." Susan's actions belie her contention Tom's poor judgment and alcohol misuse cause him to be an unfit parent. Susan proposed a joint physical custody plan under which she and Tom would alternate living in the parties' Valley City home with the children. At trial, she testified she saw no "drawbacks to the children to initiating that kind of a joint custodial relationship." Susan also chose to purchase a home in Devils Lake and to remain working in Devils Lake after the parties had sold their stores and separated. If Susan truly believed Tom is unfit, she would not have allowed Tom to spend considerable time alone in Valley City with the children or proposed a joint physical custody plan. Moreover, the record indicates the trial court did consider the allegations of Tom's alcohol misuse and poor judgment. Near the conclusion of the trial, the court inquired about an instance of Tom's alleged alcohol-related misconduct. Moments later, the trial

1. Susan submitted a proposal for joint custody, a proposal granting her custody and granting Tom limited visitation, and a proposal granting her liberal visitation if Tom was awarded custody.

court indicated "[b]oth parents are fit parents." At oral argument, Susan's attorney conceded he had submitted proposed findings to the trial court which most likely included findings regarding Tom's alcohol use and the trial court must have considered and rejected those findings since it did not adopt them. The trial court thus did not err in failing to consider evidence of Tom's alleged alcohol misuse and poor judgment.

[¶ 15] Susan also argues the trial court failed to consider her history of being the primary caretaker; however, she fails to demonstrate she was the primary caretaker during the marriage. The primary caretaker rule has not been given presumptive status in this state; however, it is a relevant factor to be considered by the trial court in its review under N.D.C.C. § 14–09–06.2. *Reeves v. Chepulis*, 1999 ND 63, ¶ 17, 591 N.W.2d 791. "The primary caretaker is generally the parent who provides the child with daily nurturance, care and support...." *Id.* Indicia of primary caretaker status include planning and preparing meals; bathing, grooming, and dressing; acquiring and cleaning clothing; providing medical care, including nursing and trips to physicians; arranging for social interaction with peers; arranging alternative care; putting the child to bed at night and waking the child in the morning; disciplining the child; educating the child on religious, cultural, social, and other subjects; and teaching the child elementary skills, such as reading, writing and arithmetic. *Id.* Susan points out one witness other than herself who testified Susan was the primary caretaker during the marriage. Susan testified she spent time each week in Devils Lake but returned to Valley City to perform caretaking duties. Susan, however, conceded the parties' work schedules was the factor "most determinative of ... who was taking care of the children" and Tom performed household duties while she was in Devils Lake.[2] Tom testified he performed many caretaking tasks, including putting the children to bed at night and waking them in the morning, preparing meals, reading with them, and taking them to and from school and other activities. Although the guardian ad litem indicated Susan might have been the emotional caretaker, the guardian ad litem determined Tom was the primary caretaker. In her report, the guardian ad litem found "[t]he children have been primarily in Tom's care since their school days (which includes preschool and kindergarten) and their routine since those days has been school and home to Tom." Based on the evidence, the trial court did not clearly err in finding both parties shared caretaking duties during the marriage.

[¶ 16] The foregoing shows there is evidence supporting the trial court's determination the best interests of the children favor awarding custody to Tom. Reviewing the entire record, we are not left with a definite and firm conviction a mistake has been made. We thus hold the trial court did not clearly err in determining custody.

### III

[¶ 17] Because the trial court did not clearly err in awarding custody of the parties' children to Tom, we affirm.

[¶ 18] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, DALE V. SANDSTROM, JJ., concur.

---

2. One party's mere spending more time with the children than the other party is not determinative of stability or caretaking. *Schneider v. Livingston*, 543 N.W.2d 228, 232 (N.D. 1996).