2001 ND 34

**Malcolm R. PEEK, Plaintiff and Appellant,**

v.

**Kimberly J. BERNING, Defendant and Appellee.**

**No. 20000056.**

Supreme Court of North Dakota.

Feb. 15, 2001.

Brenda A. Neubauer, Neubauer & Oster, Bismarck, ND, for plaintiff and appellant.

Thomas M. Tuntland, Mandan, ND, for defendant and appellee.

KAPSNER, Justice.

[¶ 1] Malcolm R. Peek appeals from the district court's judgment finding the best interests of the child supported an award of joint legal and physical custody with a schedule of rotating physical custody. We reverse and remand for further proceedings in accordance with this opinion.

I

[¶ 2] Malcolm R. Peek and Kimberly J. Berning were never married, but in February 1997 they had one child together. Berning also has two other children who reside with her. When Peek and Berning's child was born, Berning was employed as a registered nurse in North Dakota, and Peek was working on a doctoral degree in Arizona but returned to North Dakota two weeks before the child's birth and stayed for two weeks after her birth. In May 1997, Peek returned from Arizona and lived with Berning until July 1997. From July to September 1997, Peek only lived with Berning on weekends. After Peek took a job at an elementary school in Bismarck and purchased a house in New Salem, Berning took a nursing position in Bismarck and moved in with Peek in November 1997. In September 1998, Berning moved out and took their child with her. Two weeks later, when Berning attended an Alcoholics Anonymous conference out of town, she left their child with Peek. While Berning attended the confer-

ence, Peek filed for custody, requesting an ex parte interim order due to an alleged threat of imminent emotional and physical danger to their child. Peek's affidavit testified he was the primary caretaker since their child's birth, and Berning had a history of alcohol and drug abuse, had a violent temper, repeatedly struck her children, and repeatedly spanked their child causing her to cry hysterically. As a result of the interim order, Peek got custody of the child for 14 months until trial. The trial court denied Berning's request to vacate the interim order, reasoning the best interests of the child required continuation of the interim order. The trial court stated, "The child is in a stable and healthy situation now and should not be shuffled back and forth while this matter is pending."

[¶ 3] In December 1999, the trial court concluded the best interests of the child factors favored Peek, but both parties are good parents, and spending as much time as possible with each parent is in the child's best interests. The trial court awarded the parties joint physical and legal custody of their child, giving a 28–day schedule of rotating shared custody before the child starts kindergarten, after which custody alternates on a monthly basis. Peek appeals.

II

[¶ 4] An award of custody is a finding of fact which will not be set aside unless clearly erroneous, that is, if induced by an erroneous view of the law, if no evidence exists to support the finding, or if the reviewing court, on the entire evidence, has a definite and firm conviction the trial court made a mistake. *Kjelland v. Kjelland*, 2000 ND 86, ¶ 8, 609 N.W.2d 100.

[¶ 5] Custody is awarded to the parent who will, in the opinion of the judge, promote the best interests and welfare of the child. N.D.C.C. § 14–09–06.1. For the purpose of custody, the best interests and

welfare of the child are determined by the court's consideration of several factors:

a. The love, affection, and other emotional ties existing between the parents and child.

b. The capacity and disposition of the parents to give the chid love, affection, and guidance and to continue the education of the child.

c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

d. The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.

e. The permanence, as a family unit, of the existing or proposed custodial home.

f. The moral fitness of the parents.

g. The mental and physical health of the parents.

h. The home, school, and community record of the child.

i. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

j. Evidence of domestic violence.... If the court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child....

k. The interaction and interrelationship ... of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests....

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child....

m. Any other factors considered by the court to be relevant to a particular child custody dispute.

N.D.C.C. § 14–09–06.2.

[¶ 6] The district court has substantial discretion in making custody determinations, but it must consider all the best interests factors. *Cox v. Cox*, 2000 ND 144, ¶ 10, 613 N.W.2d 516. A separate finding is not required for each factor, but the court's findings should be stated with sufficient specificity to enable a reviewing court to understand the factual basis for the district court's decision. *Id.* We will not retry a custody case or substitute our judgment for that of the trial court, if the trial court's determination is supported by evidence in the record. *Id.* at ¶ 9.

### III

[¶ 7] Peek argues all the best interests factors should have favored him, so the trial court erred in weighing the best interests factors.

[¶ 8] Under factor (a), Peek claims all his witnesses stated the child is the focus of his household, and no witness gave a similar opinion about Berning, yet the court found this factor favors neither party. However, we note that the trial court indicated both parties love and show affection to the child, and each parent said the other loves the child and is a good parent. Accordingly, the trial court did not clearly err in finding this factor favors neither party.

[¶ 9] Under factor (c), Peek contends he assumed most of the responsibility for the child, but the court found this factor favored neither party. However, the trial court's findings indicate Peek re-

turned to Arizona on March 1, 1997, two weeks after the child's birth, until May 1997. From May to about July 1997, Peek lived with Berning, who was working full-time, and Peek provided much of the child care. From July to September 1997, Peek was only in town on weekends, so Berning provided most of the child care. The court's findings show Peek only lived with the child full-time for three months out of her first nine months. Then both parents worked full-time until March 1998 when Berning began working a 24–hour week so she could spend more time with the child, a schedule which she continued until the parties separated in September 1998. Moreover, we have stated a parent's commitment to a child may be measured by "noncaretaking" conduct showing devotion to parenting. *Kjelland*, 2000 ND 86, ¶ 10, 609 N.W.2d 100. Thus, the trial court's finding on this factor was not clearly erroneous.

[¶ 10] Under factors (d) and (h), Peek asserts the trial court erred in finding these factors favored neither party, when the child lived with Peek in a stable satisfactory environment for 14 months. However, we have stated that relying on a parent's primary caretaking pursuant to an interim order might be improper. *See Kjelland*, 2000 ND 86, ¶ 10, 609 N.W.2d 100. Furthermore, the trial court expressly found Peek, in his affidavit supporting his request for an interim order, had "exaggerated, and at worst lied, in order to gain the tactical advantage of having custody of [the child] until trial." The court found no evidence Berning was a perpetrator of abuse or had a violent temper, and Peek did not testify to seeing Berning repeatedly strike her older children and only saw her spank their child once on the bottom and a couple of times on the hands, but did not describe hysterical crying. Therefore, the court stated there was "no compelling evidence that maintaining continuity of [the child's] present living arrangement is essential to her best interest."

[¶ 11] Under factor (e), Peek claims he is more settled since Berning has sent job applications to a new town and had only been at her place of employment four months at the time of trial, whereas Peek plans to remain with his current employer. Because the trial court considered both parties lived in several different places and had several different jobs, but now both are purchasing homes, have secure jobs, and are planning on staying in state, we conclude the trial court did not clearly err in finding this factor favors neither party.

[¶ 12] Under factor (g), we reject Peek's argument that this factor should favor him when no evidence showed his social drinking and past drug use affected his parenting ability, but Berning suffered from depression, has a history of substance abuse, and rates sobriety over her children. Juxtaposed to the trial court's findings that Berning has successfully completed alcoholism treatment, maintained sobriety for ten years, and sought help for her depression are the court's findings that Peek drinks every night, recently used marijuana, and consumed alcohol while driving with the children in the car. We have affirmed a custody award to a parent who drank in a social manner but did not place the children in danger. *Kjelland*, 2000 ND 86, ¶ 14, 609 N.W.2d 100. However, Peek drank while driving with the children, and the trial court indicated Peek's possession and use of marijuana is illegal and "not in the best interests of a child, even if the child is not aware of its presence and use." The trial court's neutral finding under this factor was based on a consideration of relevant evidence. We cannot conclude the trial court's finding was clearly erroneous.

[¶ 13] Under factor (j), Peek claims the trial court should have found the domestic violence presumption was triggered by Berning's pattern of striking her children. We conclude the trial court did not clearly err in determining the pre-

sumption was not created as to either party as there was no evidence of an incident of domestic violence causing serious bodily injury, involving the use of a dangerous weapon, or of a pattern of domestic violence within a reasonable time proximate to the proceeding. The court found Berning and Peek agreed not to spank the child, and there was no evidence Berning had done so since that agreement. *See Brown v. Brown*, 1999 ND 199, ¶¶ 15–16, 600 N.W.2d 869 (determining several minor skirmishes between the parties, where neither was seriously injured, did not establish a pattern of domestic violence).

[¶ 14] Under factor (k), Peek argues this factor should favor him since Berning's older son left a loaded pellet gun accessible to their child. We conclude the trial court's neutral finding for this factor was not clearly erroneous, as the court stated the son's behavior can be addressed by appropriate education and discipline.

[¶ 15] Under factor (*l*), Peek insists the record is full of testimony supporting the allegations in his affidavit in support of the interim order, so he did not make false allegations against Berning. For this factor, the trial court referenced its discussion under factor (d), finding that Peek "exaggerated, and at worst lied, in order to gain the tactical advantage of having custody of [the child] until trial." The trial court stated: "In a different case, the fact that Peek misled the Court would likely be of major significance. Here, however, it does not make a great deal of difference in practical terms because of [the child's] age. The younger the child is, the more likely she can adapt to changes." Notwithstanding a child's age, we have held a parent's intentional presentment of false evidence to a court of law could be relevant to a child's best interests and to a parent's fitness for custody. *Aus v. Carter*, 1999 ND 246, ¶ 14, 603 N.W.2d 885. We stated such deception could involve false or misleading evidence of an environment that may endanger the child's physical or emotional health. *Id.* Although the

trial court did not make a specific separate finding on this factor, it is clearly implied from the court's reference that this factor does not favor Peek. Such an implied finding was not clearly erroneous.

[¶ 16] Under factor (m), Peek argues the trial court "brushed over" Peek's allegation that Berning expressed relief her son was not sexually abusing her older daughter, and the court's conclusion the child's young age will help her adapt to changes is unsupported because the child's behavior changed to being moody, clingy, and possessive of Peek during her summer visitation with Berning. The trial court indicated Berning denied saying she was relieved about no sexual abuse between her older children. The court also listed the child's young age as important for adapting to changes. The trial court properly evaluated relevant factors and did not "brush over" Peek's allegations.

[¶ 17] On the basis of the trial court's findings, we reject Peek's claim that the best interests factors all weigh in his favor. Rather, the factors are virtually in equipoise: Factors (a), (c), (d), (e), (f), (g), (h), (i), (j), (k), and (m) favor neither parent. Factor (b) favors Peek "slightly," but factor (*l*) does not favor Peek. In other cases, we have concluded the trial court did not clearly err in selecting one parent for custody when the evidence does not weigh heavily on either side. *See, e.g., Hurt v. Hurt*, 2001 ND 13, ¶ 7, 621 N.W.2d 326 (supporting an award of custody to the mother, even though many best interests factors favored neither parent, and the father was better able to continue the children's education); *Ackerman v. Ackerman*, 1999 ND 135, ¶ 9, 596 N.W.2d 332 (affirming an award of custody to one parent, although this was a close decision between two equally suitable parents, with only factor (m) as the deciding factor).

IV

[¶ 18] Peek argues the trial court clearly erred in awarding joint physical

and legal custody because the child's stability will be jeopardized and splitting custody will exacerbate conflicts between the parents. Peek contends stability is essential for a child's development and may be attained best by undivided custody which prevents the child from being confused by being bandied back and forth between parents. Peek asserts the parties disagree on virtually every aspect of parenting and are unable to communicate without conflict regarding day care, clothing, medical, discipline, and very likely choosing an elementary school since Peek lives in New Salem and Berning in Bismarck. Conversely, Berning argues the parties are able to cooperate and have agreed neither would spank the child, agreed to use the same daycare, follow nearly the same bedtime schedule for the child, share religion, and agree on which elementary school the child will attend, except for Berning's concerns about the possibility of discrimination against the child at that school.

[¶ 19] Stability is desirable in custody arrangements, so we have an aversion to changing custody when a child has been living happily in one place for a substantial period. *Silseth v. Levang*, 214 N.W.2d 361, 364 (N.D.1974). Generally, it is not in the best interests of the child to bandy the child back and forth between parents in a rotating physical custody arrangement. *Kasprowicz v. Kasprowicz*, 1998 ND 68, ¶ 15, 575 N.W.2d 921.

[¶ 20] Rotating physical custody is not clearly erroneous when supported by a district court's findings that alternating custody is in the best interests of a child. *Kasprowicz*, 1998 ND 68, ¶ 15, 575 N.W.2d 921. For example, in *Lapp v. Lapp*, 293 N.W.2d 121, 128 (N.D.1980), we affirmed a physical custody award rotating on a six-month basis. We noted both disadvantages and advantages of this Solomonic arrangement. *Id.* at 130. On the one hand, frequent shifting of a child from home to home affects the child's emotional stability. *Id.* But on the other hand, children need interaction with both parents.

*Id.* We noted several viable alternatives to rotating custody, such as awarding sole custody to one parent and liberal visitation to the other. *Id.* at 129. Ultimately, the paramount consideration in custody determinations is the best interests of the child. *Id.* at 130.

[¶ 21] Nevertheless, in *Kasprowicz*, 1998 ND 68, ¶ 15, 575 N.W.2d 921, we remanded for reconsideration of a rotating custody arrangement. Because the trial court had not made a specific finding that alternating physical custody was in the child's best interests, we suspected this arrangement was made either to "punish or reward the parents." *Id.* Similarly, in *In re Lukens*, 1998 ND 224, ¶¶ 3, 17, 587 N.W.2d 141, we reversed and remanded when a trial court did not make findings indicating the child's best interests warranted rotating physical custody monthly until the child was a year and a half and then alternating every four months until school age. We indicated rotating custody orders are often disapproved by the courts and presumptively not in the interests of very young children. *Id.* at ¶ 15. The trial court's purposes in ordering rotating custody were to force the parents to assume parental responsibility, encourage them to reopen direct communication, and allow equal sharing of the child's upbringing; but we concluded these goals could be substantially achieved with less disruption by granting one of the parents primary physical custody and the other liberal visitation. *Id.* at ¶ 16.

[¶ 22] Generally, rotating custody arrangements are only in the child's best interests if parents are able to cooperate and set aside their differences and conflicts in their role as parents. *Jarvis v. Jarvis*, 1998 ND 163, ¶ 36, 584 N.W.2d 84. In *Jarvis*, we affirmed the trial court's denial of a father's request for alternating joint physical custody because of the father's anger, hostility, and lack of communication. *Id.* at ¶ 37. We explained the parents would need to communicate fre-

quently in such a custody arrangement, and under these circumstances splitting custody and authority over decisions affecting the children could only continue the animosity between the parents and the innocent child would most surely suffer. *Id.* at ¶¶ 36–37.

[¶ 23] Here, the trial court found the child's best interests would be served by a 28–day schedule of rotating shared custody before the child starts kindergarten, after which custody alternates on a monthly basis. The trial court justified this custody arrangement because the child's best interests involve spending as much time as possible with each parent. However, the court did not make a specific finding that Peek and Berning could communicate and cooperate sufficiently to set aside their differences. The trial court's scant findings of cooperation between the parties are contradictory. For example, under the best interests factor (a) the trial court found Peek and Berning "disagree on discipline methods," but under factor (j) found Berning "agreed to not spank [the child], and there is no evidence she has done so since the discussion." The trial court also stated Berning is concerned the child will face racial discrimination at the elementary school of Peek's choice, yet the court also stated Berning "described the school as excellent." We remand for the trial court to make definitive findings regarding the ability of Peek and Berning to cooperate and communicate before awarding rotating physical custody. *See Jarvis,* 1998 ND 163, ¶ 36, 584 N.W.2d 84 (stating as a general rule, rotating custody arrangements are only in the child's best interests if parents are able to cooperate and set aside their differences and conflicts in their role as parents). If the trial court is unable to make such findings, the trial court may need to revisit the issues of custody and visitation.

## V

[¶ 24] Peek argues the trial court erred in excluding the opinion of his expert witness when three weeks before trial Peek had disclosed his intent to call this witness in supplemental interrogatories explaining the expert's testimony. Peek claims this case has no complicated issues, so it is unrealistic to think Berning was surprised by the expert's testimony and opinion. If the schedule of Berning's counsel did not allow time to depose the expert, Peek argues Berning should have requested a continuance. Peek contends he was prejudiced because the expert's excluded opinion would have assisted the court in making a custodial determination and Peek's counsel was limited in the scope of direct examination. We are not persuaded.

[¶ 25] A trial court has discretionary authority in determining appropriate sanctions for a party's failure to supplement interrogatories by disclosing the identity of an expert witness and the substance of the expert's testimony. *Dewitz v. Emery,* 508 N.W.2d 334, 339 (N.D. 1993). According to N.D.R.Civ.P. 26(e):

(1) A party is under a duty seasonably to supplement the response with respect to any question directly addressed to

. . .

. . . .

(B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the person's testimony.

We have explained Rule 26(e) does not establish a fixed time prior to trial for supplementing interrogatories seasonably. *Dewitz,* at 339. The trial court has discretion to determine seasonableness on a case-by-case basis. *Id.* However, to be seasonable the supplemental response must be made a reasonable time before trial, mindful of the purpose of the rule which is to eliminate surprise at trial. *Id.* In *Dewitz,* we held the trial court did not abuse its discretion by excluding one of the defendant's experts from testifying at trial, as the interrogatory answer was given only

39 days before trial, was incomplete, listed the same testimony as two other defense experts, and the defendant was not materially prejudiced by the exclusion since he could present two other experts. *Id.* at 338–39; *see also Kjonaas v. Kjonaas,* 1999 ND 50, ¶ 16, 590 N.W.2d 440 (holding supplementation of discovery with an expert appraisal the afternoon before trial did not occur a reasonable period before trial).

[¶ 26]   Peek's supplementation to Berning's interrogatory only stated the expert would testify about the present custody arrangement and whether such arrangement was in the child's best interests. Peek was not prejudiced by the exclusion of this expert's opinions because the expert's testimony regarding his observations and home study report were received into evidence.   The trial court did not abuse its discretion in excluding the opinion of the expert witness.

### VI

[¶ 27]   Therefore, we affirm the trial court's exclusion of the opinions of Peek's expert witness, but we reverse and remand because we conclude the trial court clearly erred in awarding rotating physical custody without a specific finding the parents could communicate and cooperate sufficiently to ensure the child's best interests would not be jeopardized.

[¶ 28] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.