628 N.W.2d 312 (2001)
2001 ND 113
Kristi S. CORBETT, Plaintiff, Appellant and Cross-Appellee,
v.
James R. CORBETT, Defendant, Appellee and Cross-Appellant.
No. 20000291.
Supreme Court of North Dakota.
June 8, 2001.
*315 Ralph F. Carter, Moosbrugger, Carter & McDonagh, P.L.L.P., Grand Forks, ND, for plaintiff, appellant, and cross-appellee.
Shirley L. Jahnke, Grand Forks, ND, for defendant, appellee, and cross-appellant.
NEUMANN, Justice.
[¶ 1] Kristi Corbett appeals and James Corbett cross-appeals from a divorce decree deciding property division, child custody, child support, and spousal support. We affirm the trial court's child custody award. We conclude the trial court's property division is not clearly erroneous; however we reverse the spousal support and child support awards and remand for further proceedings, and to the extent the spousal support award is intertwined with the property division, the court may reconsider its property division.

I
[¶ 2] James and Kristi Corbett were married in May 1995 and had two children. In 1999, Kristi Corbett sued James Corbett for divorce. Pending trial, James and Kristi Corbett stipulated to joint legal and physical custody of the children, and they agreed the children would continue to live in the marital home and each parent would alternate living in the marital home on a weekly basis. The trial court appointed a guardian ad litem for a custody evaluation. The guardian ad litem recommended awarding the parties joint legal and shared physical custody of the children, with James Corbett designated as primary custodian.
[¶ 3] The trial court granted the parties a divorce and divided their marital property. The court granted the parties joint legal custody of the children and awarded James Corbett physical custody. The court decided Kristi Corbett's presumptive child support obligation was $385 per month, but granted a downward deviation to $327 per month for extended visitation and allowed each party to claim one child as a dependent for income tax purposes. The court ordered James Corbett to pay Kristi Corbett $327 per month in spousal support for seven years to offset her child support obligation. Kristi Corbett appealed, and James Corbett cross-appealed.

II
[¶ 4] Kristi Corbett argues the trial court erred in awarding James Corbett physical custody of the children.
[¶ 5] In deciding the best interests and welfare of children for purposes of awarding custody, a trial court must consider the *316 factors set forth in N.D.C.C. § 14-09-06.2(1):
a. The love, affection, and other emotional ties existing between the parents and child.
b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.
c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.
d. The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.
e. The permanence, as a family unit, of the existing or proposed custodial home.
f. The moral fitness of the parents.
g. The mental and physical health of the parents.
h. The home, school, and community record of the child.
i. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.
j. Evidence of domestic violence....
k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.
l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50-25.1-02.
m. Any other factors considered by the court to be relevant to a particular child custody dispute.
[¶ 6] A trial court need not make specific findings for each statutory factor, but the court should consider all relevant factors. E.g., Kjelland v. Kjelland, 2000 ND 86, ¶ 8, 609 N.W.2d 100. A court's custody determination is a finding of fact which will not be reversed on appeal unless clearly erroneous. Id. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made. Id. We give due regard to the trial court's opportunity to assess the credibility and observe the demeanor of witnesses, see Wagner v. Wagner, 2000 ND 132, ¶ 12, 612 N.W.2d 555, and we do not retry custody issues or reassess the credibility of witnesses if the court's decision is supported by evidence in the record. Kjelland, at ¶ 8. We will not reverse a trial court's factual findings merely because we may have viewed the evidence differently, and a choice between two permissible views of the weight of the evidence is not clearly erroneous. E.g., Hentz v. Hentz, 2001 ND 69, ¶ 6, 624 N.W.2d 694.
[¶ 7] The trial court analyzed the best interests and welfare of the children under N.D.C.C. § 14-09-06.2, and awarded the parties joint legal custody with physical custody to James Corbett. The court said most of the statutory factors for deciding custody favored neither parent, but subdivisions (c), (d), and (e) favored James Corbett. *317 The court said both parents had an equal disposition to provide material needs for the children, but James Corbett's mother, Fran Corbett, testified she provided extensive day care for the children in the marital home and she would not continue to provide that day care if Kristi Corbett received physical custody of the children. The court found Fran Corbett had been a primary caretaker of the children, and her continued presence and involvement in the children's lives favored James Corbett. The court recognized the guardian ad litem's recommendation that James Corbett appears very stable in his employment and has long-term plans to reside in the marital home, but Kristi Corbett may have changes in her temporary living arrangements and her employment because she wanted to go back to school. The court found the children's relatively stable environment would be disrupted if Kristi Corbett were awarded custody. The court also recognized Kristi Corbett had an extramarital affair, which caused undue strain on the parties' relationship and indirectly and adversely affected the children. The court noted the guardian ad litem's concern about James Corbett's mental health, but the court said he had gone through stages of loss with the marriage and he was dealing with the situation better. The court found awarding physical custody to James Corbett would provide the most stability and least disruption for the children.
[¶ 8] Kristi Corbett argues the trial court erred in finding three statutory factors favored awarding physical custody of the children to James Corbett. She argues those factors favored neither party, but the court found they favored James Corbett because Fran Corbett testified she would not continue to provide day care for the children if the court awarded Kristi Corbett custody. Kristi Corbett argues Fran Corbett's testimony constitutes emotional blackmail that permeated the court's best interests analysis. Kristi Corbett argues, except for Fran Corbett's testimony, the evidence favored awarding her physical custody of the children. She claims James Corbett was cold to her and pushed her away when she initiated affection. She argues that evidence constituted emotional abuse under N.D.C.C. § 14-09-06.2(1)(j), (k), or (m), and favored her. She argues evidence about James Corbett's mental health favored her under N.D.C.C. § 14-09-06.2(1)(g). She claims the evidence weighed heavily in favor of her receiving custody of the children, and the court did not afford sufficient weight to the testimony of her witnesses.
[¶ 9] We decline to characterize Fran Corbett's testimony as emotional blackmail, which would preclude awarding physical custody of the children to James Corbett. Fran Corbett is not a party to the divorce action, and she has no legal obligation to provide day care for the children. The permanence of the existing or proposed custodial home is a relevant factor in deciding child custody, see N.D.C.C. § 14-09-06.2(1)(e), and the trial court was entitled to give appreciable weight to Fran Corbett's testimony about the conditions under which she would continue to provide day care for the children. We agree with the guardian ad litem that the custody decision was a close issue. However, we decline Kristi Corbett's invitation to reweigh her evidence about the best interests and welfare of the children. We do not retry custody issues or substitute our judgment for that of the trial court if its decision is supported by evidence in the record. Kjelland, 2000 ND 86, ¶ 8, 609 N.W.2d 100. There is evidence in this record to support the trial court's custody decision, and we are not left with a definite and firm conviction the court made a mistake in awarding physical custody of the *318 children to James Corbett. We therefore conclude the court's custody decision is not clearly erroneous.

III
[¶ 10] In his cross-appeal, James Corbett seeks reversal of the trial court's decisions on rehabilitative spousal support and allocation of the children as dependents for income tax purposes. He also seeks a remand for redetermination of the property distribution and child support award.

A
[¶ 11] James Corbett argues the trial court erred in making a grossly disparate property distribution. According to him, Kristi Corbett was awarded 64% of the net value of the marital estate including 4% of the marital debt, and he was awarded 36% of the net value of the marital estate including 96% of the debt. James Corbett argues the court provided no explanation for the substantially unequal distribution of the marital property and erred in not weighing Kristi Corbett's extramarital relationship more heavily in deciding the property division.
[¶ 12] Under N.D.C.C. § 14-05-24, "[w]hen a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper." A trial court's distribution of marital property need not be equal to be equitable, but the court must explain any substantial disparity. E.g., Kautzman v. Kautzman, 1998 ND 192, ¶ 7, 585 N.W.2d 561. A trial court's valuation and division of property are treated as findings of fact and will not be reversed on appeal unless clearly erroneous. Id. at ¶ 8. In distributing marital property, a trial court applies the Ruff-Fischer[1] guidelines:
These guidelines allow the trial court, in making a property distribution, to consider the respective ages of the parties to the marriage; their earning abilities; the duration of the marriage and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical conditions; their financial circumstances as shown by the property owned at the time; its value and income-producing capacity, if any, and whether it was accumulated or acquired before or after the marriage; and such other matters as may be material.
Freed v. Freed, 454 N.W.2d 516, 520 fn. 3 (N.D.1990).
[¶ 13] Here, the trial court found:
1) Age of the partiesKristi is 27 years old, or 8 years younger than Jim, who is 35 years old.
2) Duration of the Marriage

The parties have been married since May 6, 1995, about 5 years. However, the parties have lived together since November, 1993. The divorce papers were served November of 1999.
3) Earning ability of the parties

Jim has two years at Northwest Technical College for mechanical training, and he attended UND for three and a half years, majoring in public relations. He has one year left to complete his degree. Kristi completed a one year course at the Northwest Technical Institute, but would like to go to college to get a teaching degree, and none of those credits would transfer. For the past four years, the parties have earned the following amounts, respectively: 1996 *319 Kristi earned $1,988.45 and Jim earned $31,905.96; 1997Kristi earned $6,817.25 and Jim earned $35,021.66; in 1998Kristi earned $16,574.00 and Jim earned $41,567.00; and in 1999Kristi earned $17,925.73, while Jim earned $44,526.00.
Kristi's net pay is about $1,300 per month and Jim's about $3,000.
4) Conduct of parties during the marriage

Jim acknowledged that before and after the birth of their first child, as well as during the first couple years of the marriage, he went out quite a bit while Kristi stayed home. He then testified that the roles reversed and Kristi began going out all the time and Jim stayed home. Kristi had an affair during their marriage but the affair came only towards the end of their marriage, after Kristi had twice indicated she wanted to get a divorce. The affair did not cause the breakup of their marriage, but rather was a result of ongoing problems the couple was already having.
Kristi contends that Jim caused the break-up of the marriage by his cold and indifferent attitude towards Kristi. When Kristi first asked for a divorce in 1998, Jim appeared to change for the better, but it was only temporary. After Kristi decided in 1999 that she wanted a divorce, she then had an affair. As to property division and spousal support, the affair has little bearing.
5) Party's station in life

Jim is well established at Ecolab. Kristi indicates she wants to go back to college.
6) Circumstances and necessities of each party

Kristi lists her monthly living expenses approximately as follows:
....
$1,650.00
These expenses are above bare necessities but do not include health insurance. No evidence concerning her health insurance costs was presented. Kristi also has attorney's fees and other bills.
Jim lists his monthly expenses as follows:
....
$2,200
Creditor Payments $1,293
Some of these expenses are above normal but no allowance is made for cable TV or such things as Christmas and birthday presents. Jim lists his creditor payments after his living expenses while Kristi includes her car payment in hers.
7) Health or physical conditions

Both parties are in relatively good health.
8) Financial circumstances as shown by property owned at the time of divorce/value and income producing capacity

The parties have a marital home, which they have both agreed should go to the party who obtains primary physical custody of the children. Pursuant to the stipulation of the parties the homes equity is about $22,000.00. The parties own no income producing property.
9) Whether the property was accumulated during or after the marriage

The house was obtained by Jim before they were married. Kristi testified, without contradiction, that while she and Jim were living together, Jim put up the down-payment for the house, after she selected the house, and they moved into the house the same day. She said the house was in Jim's name alone, rather than both of their names, so it would qualify for a first time homeowners loan. *320 While Jim may have made the payments on the mortgage while the couple was living there together, Kristi contributed to the upkeep of the house. The Court may also consider source of the property. The rest of the property was either purchased during the marriage or, as to property brought into the marriage, the parties have agreed already to its distribution. Therefore, this factor favors neither party.
10) Otherthere really are no other factors to be determined, except the debt of the parties, which they have pretty much agreed to.
[¶ 14] The trial court said it awarded Kristi Corbett property valued at $16,043 and debt valued at $12,500, and James Corbett property valued at $99,822 and debt valued at $83,259. The court thus awarded Kristi Corbett property with a net value of $3,543 and James Corbett property with a net value of $16,563. The court awarded Kristi Corbett one-half of James Corbett's retirement fund accumulated during the time the parties were living together or married, which resulted in each party receiving an additional $11,950. The court found that distribution of James Corbett's retirement account resulted in a total award of $15,453 to Kristi Corbett and $28,513 to James Corbett, and:
To correct the disparity the Court will award Kristi the retirement funds that Jim acquired before the parties started living together, $7,775 and the tax refund which is apparently $4,443. The Court will also order Jim to pay Kristi, from his retirement account or other account, $8,500.
The total for Kristi is thus $36,171 and the amount for Jim is $20,013.
[¶ 15] Although Kristi Corbett received a greater percentage of the property awarded to each party, the difference in actual dollars awarded to each party is not great. The trial court explained the adjustments were to correct a disparity between the parties. The court's analysis of the Ruff-Fischer guidelines and explanation are adequate to understand the basis for its property distribution. We are not left with a definite and firm conviction the court made a mistake in its property division, and we therefore conclude its property division is not clearly erroneous.

B
[¶ 16] James Corbett argues the trial court erred in ordering him to pay Kristi Corbett rehabilitative spousal support. He argues she presented no credible evidence to establish she was disadvantaged because of the divorce, and the trial court did not specifically find she was disadvantaged. He argues she "came into the relationship with very little and contributed very little throughout it." He argues there was insufficient evidence she needed rehabilitative spousal support to assist her in obtaining further education after the divorce, and she presented "no definitive post-divorce rehabilitative plan of any kind" in that she presented "absolutely no evidence of a planned course of study, anticipated expense, or that she personally had even actively explored that possibility." James Corbett argues the court's spousal support award failed to equitably balance the burdens created by the divorce, because he does not have the financial resources to pay spousal support.
[¶ 17] Under N.D.C.C. § 14-05-24, upon granting a divorce, a trial court may compel either spouse to make such suitable allowances to the other for spousal support as the court deems just. E.g., Marschner v. Marschner, 2001 ND 4, ¶ 10, 621 N.W.2d 339. A trial court's determination on spousal support is treated as a finding of fact which will not be set aside *321 on appeal unless clearly erroneous. E.g., Schiff v. Schiff, 2000 ND 113, ¶ 42, 611 N.W.2d 191. In deciding spousal support issues, a trial court applies the Ruff-Fischer guidelines.[2]E.g., Moilan v. Moilan, 1999 ND 103, ¶ 10, 598 N.W.2d 81.
[¶ 18] In Riehl v. Riehl, 1999 ND 107, ¶ 11-12, 595 N.W.2d 10 (citations omitted), we described two types of spousal support:
Spousal support is aimed at balancing the burdens and disadvantages created by the divorce. We recognize permanent and rehabilitative spousal support as two distinct remedies. Permanent support is appropriate when the economically disadvantaged spouse cannot be equitably rehabilitated to make up for the opportunities and development she lost during the course of the marriage.
Rehabilitative spousal support, on the other hand, is appropriate when it is possible to restore an economically disadvantaged spouse to independent economic status, or to equalize the burden of divorce by increasing the disadvantaged spouse's earning capacity. There are two approaches to awarding rehabilitative spousal support. One is the "minimalist doctrine" which has as its objective rehabilitating the recipient for minimal self-sufficiency. We have rejected this doctrine in favor of the more "equitable" approach to determining rehabilitative spousal support, which attempts to provide education, training, or experience that will enable the recipient to achieve "adequate" or "appropriate" self-support while improving her employment skills.
[¶ 19] A purpose of rehabilitative support is to enable a disadvantaged spouse to achieve suitable and appropriate self-support, including educational goals. E.g., Nefzger v. Nefzger, 1999 ND 119, ¶ 23, 595 N.W.2d 583. A disadvantaged spouse is one who has "foregone opportunities or lost advantages as a consequence of the marriage and who has contributed during the marriage to the supporting spouse's increased earning capacity." Van Klootwyk v. Van Klootwyk, 1997 ND 88, ¶ 16, 563 N.W.2d 377.
[¶ 20] In Wahlberg v. Wahlberg, 479 N.W.2d 143, 145 (N.D.1992), a husband argued that, to be entitled to rehabilitative spousal support, a trial court must find the husband's former wife was disadvantaged. Because the former wife was self-supporting when the divorce was granted, the husband argued she was not disadvantaged. Id. We affirmed the court's award of rehabilitative spousal support, concluding although the court did not expressly find the wife was disadvantaged by the divorce, the court found rehabilitative support was appropriate and that finding necessarily implied a finding the wife was disadvantaged by the divorce. Id.
[¶ 21] Here, the trial court did not explicitly find Kristi Corbett was disadvantaged by the divorce. The court's analysis of the Ruff-Fischer guidelines reflects the court evaluated the duration of the parties' relationship and marriage, the parties' earning capacities, and the financial burden imposed on Kristi Corbett by the divorce as well as James Corbett's ability to pay spousal support. The court found although James Corbett made the mortgage payments for the house, Kristi Corbett contributed to the upkeep of the house. The court made findings about the parties' relative earning histories and their educational backgrounds. The court also found James Corbett was well established with his employer and Kristi Corbett wanted to attend college to obtain a teaching *322 degree. Kristi Corbett testified she wanted to go to college part time and work part time, and it would take her eight years of part-time college to earn a degree. She sought spousal support of $1,000 a month for those eight years, plus an additional two years to "get back on her feet." The trial court awarded her spousal support for seven years. Although the trial court's findings could have been more explicit, we are able to discern the basis for the court's decision to award spousal support from its analysis and findings under the Ruff-Fischer guidelines.
[¶ 22] The court awarded Kristi Corbett spousal support of $327 per month to "offset" her child support obligation to James Corbett. In deciding the amount of spousal support, a trial court must consider all the relevant Ruff-Fischer guidelines, including the disparate earning capacity of the parties and the liquidity or the income producing capacity of property awarded to a disadvantaged spouse. See e.g., Schiff, 2000 ND 113, ¶ 42, 611 N.W.2d 191. In calculating an obligor's child support obligation, the child support guidelines require the obligor's gross income include spousal support received from a child support obligee. See N.D. Admin. Code § 75-02-04.1-01(5)(b) (stating examples of gross income include spousal support payments received). If a non-custodial parent is entitled to spousal support, the child support guidelines necessarily contemplate that trial courts decide the spousal support issue before deciding the spousal support recipient's child support obligation. When the child support guidelines are considered in the context of a spousal support award, an award of spousal support calculated primarily to offset and negate a child support obligation is inappropriate. Here, the trial court's decision indicates the spousal support award was primarily to offset child support. We remand for further consideration of spousal support under the Ruff-Fischer guidelines. Although we have concluded the trial court's property division is not clearly erroneous, to the extent the court's spousal support award is intertwined with its property division, the court may reconsider its property division on remand. See, e.g., Nefzger, 1999 ND 119, ¶ 23, 595 N.W.2d 583.

C
[¶ 23] James Corbett argues the trial court erred in allowing each party to claim one of the children as a dependent for income tax purposes.
[¶ 24] We have said that, when properly informed, trial courts should consider tax consequences in divorce actions. Kostelecky v. Kostelecky, 537 N.W.2d 551, 554 (N.D.1995); Neubauer v. Neubauer, 524 N.W.2d 593, 596 (N.D.1994). A court may allocate income tax dependency exemptions. Mahoney v. Mahoney, 1997 ND 149, ¶ 21, 567 N.W.2d 206. In Mahoney, at ¶ 21, we said it may be prudent to allocate the dependency tax exemptions to the party who will receive the most benefit.
[¶ 25] In James Corbett's post-trial brief, he proposed "[t]hat, for so long as each party is employed full-time, the parties shall each have one of the minor children as a dependent for income tax purposes. If only one child is eligible for such a claim, the parties shall alternate the deduction. If one party should terminate his or her employment, the other shall have the right to claim both children as dependent tax exemptions." Kristi Corbett agreed with Jim's proposal that "each have one of the minor children [as a dependent for income tax purposes], but disagrees that the parties have to remain employed full-time to retain the tax deduction, because that would not allow Kristi *323 [Corbett] to claim one of the children as a tax deduction if she went to school part time, and worked part time, and [James Corbett] is fully aware of that and that is why he has made that suggestion." The trial court decided each party was entitled to claim one of the children as a dependent for income tax purposes without the full-time employment condition proposed by James Corbett.
[¶ 26] Although, the trial court did not adopt the full-time employment condition suggested by James Corbett, the court did adopt his ultimate suggestion to allow each party to claim one of the children as a dependent for income tax purposes. James Corbett did not present any evidence to the trial court about the tax consequences of the deductions for either party, and on appeal he has offered only conclusory arguments about those tax effects. See Neubauer, 524 N.W.2d at 596 (stating a trial court, when properly informed, must take tax effects into account in divorce action). On this record, we cannot say the court erred in splitting the deductions for the children.

D
[¶ 27] James Corbett argues the trial court erred in deciding Kristi Corbett's child support obligation.
[¶ 28] In Buchholz v. Buchholz, 1999 ND 36, ¶ 11, 590 N.W.2d 215, we reformulated our standard of review for child support decisions:
Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. A court errs as a matter of law when it fails to comply with the requirements of the Guidelines. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made." When a district court may do something, it is generally a matter of discretion. A district court abuses its discretion when it acts arbitrarily, capriciously, or unreasonably. A district court errs as a matter of law when it fails to make required findings or required findings are not intelligible. (emphasis in original) (citations and footnote omitted).

1
[¶ 29] For purposes of Kristi Corbett's child support obligation, the trial court found her gross income was about $16,442 per year, and utilizing the child support guidelines, the court found her net monthly income was about $1,300, which resulted in a presumptive child support obligation of $385. The court decided, however, she was entitled to a downward deviation for "extended visitation" under N.D. Admin. Code § 75-02-04.1-08.1[3] and set her child support obligation at $327 per month.
*324 [¶ 30] James Corbett argues the trial court erred in granting Kristi Corbett a downward deviation in her child support obligation. He argues Kristi Corbett did not receive extended visitation as defined by N.D. Admin. Code § 75-02-04.1-08.1, because the court-ordered visitation did not provide her with visitation of more than sixty of ninety consecutive nights, nor did it result in an annual total of one hundred sixty-four nights. Kristi Corbett responds the court established the minimum number of overnight visitations, and the court's award of "liberal and reasonable" visitation with "minimum" requirements necessarily results in satisfaction of the requirement of visitation for sixty of ninety consecutive nights, or one hundred sixty-four nights.
[¶ 31] The trial court's visitation order provided:
Kristi shall have liberal and reasonable visitation with the children. If the parties can not agree as to what liberal and reasonable visitation means, it shall mean, at a minimum, Kristi will have the children every other weekend from 5:00 p.m. on Friday until 6:00 p.m. on Sunday. She will also have the children every Tuesday and Thursday nights from 5:00 until 7:00. All holidays will be alternated between the custodial and non-custodial parent, with Jim getting the children every Father's Day and his birthday and Kristi getting the children every Mother's Day and on her birthday. The holidays shall be Thanksgiving, Christmas, New Years, Easter, Memorial Day, 4th of July and Labor Day. The Christmas holiday visitation shall include a week including Christmas Day one season and New Years Day the next season. The holiday visitation shall include the contiguous weekend. The children's birthdays will be alternated between Jim and Kristi, unless they work out a satisfactory alternate agreement between them. Both parents will have reasonable telephone visitation with the children during the week and on weekends. The summer months shall be divided equally between the parties.
[¶ 32] We reject Kristi Corbett's argument the trial court's general statement of "liberal and reasonable" visitation satisfies the specific requirement of a court order providing for extended visitation. Rather, N.D. Admin. Code § 75-02-04.1-08.1, contemplates visitation actually ordered by the trial court, rather than hypothetical possibilities. Kristi Corbett has not identified any scenarios satisfying the requirement for court ordered visitation exceeding sixty of ninety consecutive nights, or an annual total of one hundred sixty-four nights, and we are unable to discern any scenarios satisfying that requirement. The visitation ordered by the court did not exceed sixty of ninety consecutive nights, or an annual total of one hundred sixty-four nights. We conclude the court did not order extended visitation as defined by N.D. Admin. Code § 75-02-04.1-08.1, and the court's downward deviation of Kristi Corbett's child support obligation failed to comply with child support guidelines as a matter of law. We therefore remand for calculation of Kristi Corbett's child support obligation under the guidelines.[4]

2
[¶ 33] James Corbett argues the trial court erred in failing to award him an *325 upward deviation in child support because of extensive day care costs. He claims he incurred $250 per month in day care expenses, and he was entitled to an upward adjustment of Kristi Corbett's child support obligation.
[¶ 34] The cost of day care may justify an upward deviation from the presumptively correct amount of support required by the guidelines. N.D. Admin. Code § 75-02-04.1-9(2)(f). See, e.g., Jarvis v. Jarvis, 1998 ND 163, ¶ 29, 584 N.W.2d 84. James Corbett's mother, Fran Corbett, provided day care for the children at a rate of $1.50 per hour. On this record, we are not persuaded the court erred in not granting an upward deviation in Kristi Corbett's child support obligation for day care provided by James Corbett's mother.

IV
[¶ 35] We affirm the trial court's child custody award. We conclude the trial court's property division is not clearly erroneous; however, we reverse the spousal support and child support awards and remand for proceedings consistent with this opinion, and to the extent the spousal support award is intertwined with the property division, the court may reconsider its property division.
[¶ 36] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, CAROL RONNING KAPSNER, DALE V. SANDSTROM, JJ. concur.
NOTES
[1] See Ruff v. Ruff, 78 N.D. 775, 52 N.W.2d 107 (1952), and Fischer v. Fischer, 139 N.W.2d 845 (N.D.1966).
[2] See fn. 1.
[3] Section 75-02-04.1-08.1, N.D. Admin. Code provides:

1. For purposes of this section, "extended visitation" means visitation between an obligor and a child living with an obligee scheduled by court order to exceed sixty of ninety consecutive nights or an annual total of one hundred sixty-four nights.
2. Notwithstanding any other provision of this chapter, if a court order provides for extended visitation between an obligor and a child living with an obligee, the support obligation presumed to be the correct child support amount due on behalf of all children of the obligor living with the obligee must be determined under this subsection.
[4] In setting Kristi Corbett's child support obligation, the trial court did not include spousal support received by her. See N.D. Admin. Code 75-02-04.1-01(5)(b) (stating examples of gross income include spousal support payments received). In part III B of our decision, we concluded the trial court erred in awarding spousal support primarily to offset Kristi Corbett's child support obligation. On remand, any spousal support received by Kristi Corbett must be included in her gross income.