674 N.W.2d 505 (2004)
2004 ND 31
MORTON COUNTY SOCIAL SERVICE BOARD as assignee for Karen Hall, Karen Hall, and S.H., minor child, by and through her guardian, Karen Hall, Plaintiffs
Karen Hall, Plaintiff and Appellant
v.
Thane SCHUMACHER, Defendant and Appellee.
No. 20030226.
Supreme Court of North Dakota.
February 2, 2004.
*506 Kent M. Morrow of Severin, Ringsak & Morrow, Bismarck, ND, for plaintiff and appellant.
Sherry Mills Moore, Bismarck, ND, for defendant and appellee.
SANDSTROM, Justice.
[¶ 1] Karen Hall is appealing a South Central Judicial District Court judgment awarding custody of S.H. to Thane Schumacher. Hall argues the district court erred in finding no domestic violence had occurred to trigger the presumption against awarding custody to Schumacher. She also argues the district court erred in finding that several factors under the "best interests of the child" analysis favored Schumacher. We affirm, concluding the district court did not err in finding no domestic violence presumption and in finding the "best interests of the child" analysis favored Schumacher.

I
[¶ 2] Hall and Schumacher are the parents of S.H., born in 2001. Hall and Schumacher never married. On January 29, 2002, the Morton County Social Service Board, Hall, and S.H. filed a complaint seeking reimbursement of child support from Schumacher. On February 11, 2002, Schumacher filed his answer and counterclaim, seeking custody of S.H. A custody trial was held on May 22-23, 2003.
[¶ 3] At the time of trial, Hall lived in Mandan and had held various jobs, having *507 worked as a maid, an assembly worker, a waitress, and an exotic dancer. She has a General Education Diploma ("GED") and testified she has looked into continuing her education at Bismarck State College. She was twenty-five years old at the time of trial and has another child, J.G., age six, who resides with her.
[¶ 4] At the time of trial, Schumacher was employed as a licensed day-care provider, operating a twenty-four hour day care, seven days a week in Mandan, North Dakota. He has taken classes in nutrition, cardiopulmonary resuscitation, and first aid. He was twenty-one years old at the time of trial. Schumacher has a GED and testified that he enrolled in Bismarck State College for the fall 2003 semester.
[¶ 5] Testimony at trial shows S.H. developed several complications after she was born, including pyloric stenosis, a condition in which the stomach closes and food cannot get through; torticollis, a condition in which the head tips to one side; and respiratory syncytial virus. S.H. resided with Hall full time until June 2002, when an interim order allocated physical custody of S.H. between the parties. On June 5, 2003, the district court issued its memorandum decision and order finding the "best interests of the child" analysis favored Schumacher, and awarded him custody of S.H. Judgment was entered on June 10, 2003.
[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 28-27-01 and 28-27-02.

II
[¶ 7] Hall argues the district court erred in finding that no domestic violence had occurred to trigger the presumption against awarding custody to Schumacher under N.D.C.C. § 14-09-06.2(1)(j). Hall argues an incident involving a computer and an ax was domestic violence. She argues, because a dangerous weapon was used, the district court misinterpreted the statute defining domestic violence.
[¶ 8] A district court's finding on domestic violence is a factual determination that will not be reversed unless clearly erroneous. A statutory interpretation, however, is a matter of law, fully reviewable on appeal. Lawrence v. Delkamp, 2000 ND 214, ¶ 7, 620 N.W.2d 151.
[¶ 9] Under N.D.C.C. § 14-09-06.2(1)(j):
If the court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child. This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent's participation as a custodial parent. The court shall cite specific findings of fact to show that the custody or visitation arrangement best protects the child and the parent or other family or household member who is the victim of domestic violence.
[¶ 10] Domestic violence "includes physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining *508 family or household members." N.D.C.C. § 14-07.1-01(2) (emphasis added).
[¶ 11] Use of a dangerous weapon without domestic violence is not enough to create a rebuttable presumption. The statute is clear that there must be a finding of domestic violence and an incident of domestic violence involving the use of a dangerous weapon.
[¶ 12] During trial, disputed testimony was presented as to the incident involving Hall and Schumacher. Hall testified Schumacher got mad at her. She claims he took an ax and slammed it into his computer and told her that if she had not been pregnant, he would have used the ax on her. She testified she called the police and the police arrested him. She said that she and her son stayed in the bathroom until the police got there and that the door was hit by the ax. Hall testified Schumacher was arrested. She testified the parties ended their relationship shortly after this incident.
[¶ 13] Schumacher testified the couple were fighting over who should get the car and who should get the computer. He testified he put a hole in the corner of the computer screen because he figured she would try to take the computer. He testified he did not shatter the computer. His testimony makes no mention of hitting the bathroom door, and he claims he did not swing the ax. He testified Hall was on the other side of the room and J.G. was in the bathroom during the incident. He testified he was arrested for disorderly conduct, not domestic violence.
[¶ 14] The district court found:
Two incidents were presented to the Court regarding domestic violence. The first incident occurred when the two parties lived together. During an argument [Schumacher] used an axe to destroy the computer, which was the issue of the argument. Police were called, [Schumacher] was taken into custody. [Schumacher] was released back to the home that night and [Hall] indicated she was not afraid of [Schumacher]. [Schumacher] was convicted of disorderly conduct and did complete anger management classes as part of this incident. The evidence does not indicate [Schumacher] threatened [Hall]. The act was inappropriate and [Schumacher] has followed through on the consequences of the act. The Court does not find this to be domestic violence.
The second act is alleged to have occurred at Ms. Pinks's residence. [Hall] alleges [Schumacher], while playing a game grabbed her, injured her neck and drug her down some stairs. Ms. Pinks testified to this incident. Ms. Pinks's testimony is discounted due to inconsistencies. [Schumacher] admits the incident occurred, but any injury was accidental and not as extensive as alleged by [Hall]. [Hall's] claim of injuries is suspect as she did not seek immediate treatment for the alleged injuries. The Court does not find this to be domestic violence.
[¶ 15] Although Hall testified Schumacher told her he would have used the ax on her if she had not been pregnant, she said that statement was made a little bit later. When she was asked how much later, she explained it was made after the baby had been born and not at the time of the incident. Linda Hawley, Schumacher's mother, testified that on the night of the ax incident, Hall agreed Schumacher would not hurt her. Schumacher testified Hall told police he did not threaten her. Hall did not recall having told this to the police. Schumacher also testified Hall admitted she called the police because she was mad and Hall told him she was not afraid of him. Hall claims she did not tell *509 police she was not afraid and claims she was afraid of Schumacher. Hall allowed Schumacher back into the home that evening, however, and did not file a protection order.
[¶ 16] "A choice between two permissible views of the evidence is not clearly erroneous." Ryan v. Flemming, 533 N.W.2d 920, 924 (N.D.1995). We respect the opportunity of the trial court to weigh the credibility of the witnesses. Id.; N.D.R.Civ.P. 52(a).
[¶ 17] The district court considered the conflicting testimony of Hall and Schumacher regarding the alleged incident of domestic violence and determined no domestic violence had occurred. The court also found no bodily harm or injury had occurred or any infliction of fear of imminent physical harm. The district court found the evidence did not show that Schumacher was threatening Hall or that Hall was afraid of Schumacher. The district court's findings of fact are supported in the record.
[¶ 18] In similar circumstances involving destruction of property, this Court has found evidence of domestic violence insufficient to raise any presumption under the statute. See Ryan, 533 N.W.2d at 923-24 (father's acts of breaking flower pot and pulling phone off the wall, which produced no actual injury to household members, were insufficient to raise domestic violence presumption). See also Holtz v. Holtz, 1999 ND 105, ¶ 29, 595 N.W.2d 1 (no domestic violence when a knife was used to slash car tires).
[¶ 19] We conclude the district court did not misinterpret the statute by failing to find that use of a dangerous weapon, by itself, constituted domestic violence. We also conclude the district court's finding of no domestic violence was not clearly erroneous. Although we conclude this particular incident involving the ax was not domestic violence, under other circumstances, destroying property with an ax could be domestic violence. On the other hand, had the district court found domestic violence had occurred, sufficient facts exist in this case to rebut the presumption against awarding custody to Schumacher.
[¶ 20] Clear and convincing evidence to rebut the presumption may require the accused to demonstrate why custody with the accuser is not in the child's best interests. Zuger v. Zuger, 1997 ND 97, ¶ 31, 563 N.W.2d 804.
[¶ 21] In this case, the court found none of the "best interests of the child" factors favored Hall. The findings of the district court explain in detail why the interests of S.H. would be better served in Schumacher's custody. Further, Schumacher has undergone anger management classes.
[¶ 22] The district court did not err in finding no domestic violence had occurred.

III
[¶ 23] Hall also argues the district court erred in finding several factors under the "best interests of the child" analysis favored Schumacher.
[¶ 24] We will not set aside a custody award unless it is clearly erroneous. Schmidt v. Schmidt, 2003 ND 55, ¶ 5, 660 N.W.2d 196. "A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made." Kjelland v. Kjelland, 2000 ND 86, ¶ 8, 609 N.W.2d 100.
[¶ 25] The district court is in a better position to evaluate testimony, because it observes the demeanor and credibility of the witnesses. Corbett v. Corbett, *510 2001 ND 113, ¶ 6, 628 N.W.2d 312. If the court's decision is supported by evidence in the record, we do not retry custody issues or reassess the credibility of witnesses. Id. We will not reverse the district court's findings merely because we view the evidence differently, and a choice between permissible views of evidence is not clearly erroneous. Id.
[¶ 26] A district court must consider all the factors in N.D.C.C. § 14-09-06.2(1) and base its decision on the best interests and welfare of the child. Schmidt, 2003 ND 55, ¶ 6, 660 N.W.2d 196.
[¶ 27] Section 14-09-06.2(1), N.D.C.C., provides:
For the purpose of custody, the best interests and welfare of the child is determined by the court's consideration and evaluation of all factors affecting the best interests and welfare of the child. These factors include all of the following when applicable:
a. The love, affection, and other emotional ties existing between the parents and child.
b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.
c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.
d. The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.
e. The permanence, as a family unit, of the existing or proposed custodial home.
f. The moral fitness of the parents.
g. The mental and physical health of the parents.
h. The home, school, and community record of the child.
i. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.
j. Evidence of domestic violence. In awarding custody or granting rights of visitation, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child. This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent's participation as a custodial parent. The court shall cite specific findings of fact to show that the custody or visitation arrangement best protects the child and the parent or other family or household member who is the victim of domestic violence. If necessary to protect the welfare of the child, custody may be awarded to a suitable third person, provided that the person would not allow access to a violent parent except as ordered by the court. If the court awards custody to a third person, the court shall give priority to the child's nearest suitable adult relative. The fact that the abused parent suffers from the effects of the abuse may not be *511 grounds for denying that parent custody. As used in this subdivision, "domestic violence" means domestic violence as defined in section 14-07.1-01. A court may consider, but is not bound by, a finding of domestic violence in another proceeding under chapter 14-07.1.
k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.
l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50-25.1-02.
m. Any other factors considered by the court to be relevant to a particular child custody dispute.
[¶ 28] A separate finding is not required for each factor under N.D.C.C. § 14-09-06.2(1), but the district court's findings should be stated with sufficient specificity to enable a reviewing court to understand the factual basis for the court's decision. Schmidt, 2003 ND 55, ¶ 6, 660 N.W.2d 196.
[¶ 29] In considering the factors specified by N.D.C.C. § 14-09-06.2(1), the district court found factor (a) slightly favored Schumacher and factors (b), (c), (d), (e), (f), (g), (k), and (m) favored Schumacher.

A
[¶ 30] Hall argues the district court erred in finding factor (a) favored Schumacher. She argues the court failed to explain how or why Schumacher was favored. She argues the district court referred to the testimony provided in court and the custody investigator's report. She argues that referring to the report was an improper delegation of authority to the custody investigator. Hall cites Owan v. Owan, which states an independent investigator's report cannot be the conclusive basis of the court's decision regarding the custody of the children, because the trial court cannot delegate its power to decide questions of child custody. 541 N.W.2d 719, 722 (N.D.1996).
[¶ 31] Although the district court referred to the custody investigator's report, it did not make the report the conclusive basis for its decision. In fact, the custody investigator had found the parties equal on factor (a). The district court also referred to testimony at trial as a basis for its decision.

B
[¶ 32] Hall argues the district court erred in finding factor (b) favored Schumacher. She argues the court should have found equally for both parents and the court improperly considered her relationship with her son.
[¶ 33] The district court found:
The evidence at trial favors [Schumacher] in this category. [Hall], for different reasons, has failed to get [S.H.'s] stepbrother to school on multiple occasions. [Hall] is not prompt with dropping off or picking up [S.H.]. [Schumacher] is very structured in the care of [S.H.] to include the follow through with medical appointments and therapy. [Hall] attempts to follow through, but needs continued guidance on what is appropriate in [S.H.'s] care.
[¶ 34] The district court mentions Hall's relationship with her son, but focuses on each party's relationship with S.H. in determining each one's disposition and capacity *512 to provide love, affection, and guidance and to continue her education. Hall's lack of follow-through with appointments and therapy and her inability to promptly drop off and pick up S.H. show why Schumacher is favored in this category.

C
[¶ 35] Hall argues the district court erred in finding factor (c) favored Schumacher. She argues the court focused on her financial resources and not on her willingness to provide material goods and services to her child.
[¶ 36] The district court found:
Evidence favors [Schumacher] on this issue. [Schumacher] has developed employment, together with his mother, of a day care run out of his home. [Schumacher] is able to be present with [S.H.] during the work day due to this arrangement. [Schumacher] has made progress in arranging to attend school at BSC. [Hall] has not been working and has lost certain benefits provided by the State due to her boyfriend moving into her household. The boyfriend only began working the first day of trial. [Hall] has not been able to follow through with medical appointments and continue therapy either at home or with medical professionals. [Schumacher] provides for [S.H.] and continues to help her medical issues improve by assisting in therapy at home and insuring [S.H.] makes medical appointments.
[¶ 37] As evidenced by the district court's findings, this factor was not found solely on financial ability. The fact that Hall lost benefits because her boyfriend moved in and the fact that she has not been able to follow through with medical appointments and therapy for S.H. demonstrate her unwillingness to provide for her child.

D
[¶ 38] Hall also argues the district court erred in finding factor (d) favored Schumacher. She claims the district court favored Schumacher on this factor because he owned a house and she resided in a mobile home. She also argues the district court failed to assess whether S.H. was happy living with Hall before disturbing the living arrangement.
[¶ 39] The district court found:
[Schumacher] is favored on this point. [Schumacher] lives in a home used for a day care. Not only adequate for [S.H.], the home provides an environment to be with other children and is subject to the rules and restrictions required of a day care home. [Schumacher] has been here since February of 2002. [Hall's] home is a trailer with only two bedrooms. [S.H.] must either share a room or parties must sleep in the living room. The custody investigator provided that there were flies in the home and the temperature was warm. [Hall's] boyfriend has three children from his current marriage and there is conversation that these children could live with [Hall] and her boyfriend. [Schumacher] has shown evidence of stability and is favored on this point.
[¶ 40] The district court's findings demonstrate it considered more than Schumacher's house versus Hall's mobile home in making its decision. The district court looked at the environment where S.H. would be living.
[¶ 41] Hall further argues the district court inappropriately relied upon the investigator's report regarding flies and the temperature in her mobile home. She claims testimony at trial indicated these concerns were addressed. After reviewing the record, we conclude the district court's findings are supported and are not clearly erroneous. An updated report indicated *513 window air conditioners were purchased; however, there is no mention about the flies.

E
[¶ 42] Hall also argues the district court erred in finding factor (e) favored Schumacher. She argues it improperly considered her relationship history without finding a harmful effect on S.H. Factor (e) focuses on the child's prospects for a stable family environment. Stoppler v. Stoppler, 2001 ND 148, ¶ 9, 633 N.W.2d 142.
"The stability of a child's home can be undermined in various ways. This might include frequent moves to unfamiliar settings, a succession of persons residing in the home, live-in romantic companions for the custodial parent, or other potential disruptions. Of course, every situation needs to be examined individually."
Id. (quoting Ireland v. Smith, 451 Mich. 457, 547 N.W.2d 686, 690 n. 9 (1996)).
[¶ 43] We conclude the district court appropriately considered Hall's relationship history under this factor.

F
[¶ 44] Hall also argues the district court erred in finding factor (f) favored Schumacher. She argues the court equated morality with maturity and failed to find any effect on S.H. The district court found:
[Schumacher] is favored on this point. Both parties were, and are young adults since the birth of [S.H.]. Both parties carry baggage of problems from younger days. From the evidence at trial, [Schumacher] has made great leaps in maturing and taking on responsibility for his own life and [S.H.'s]. [Hall], although showing some improvement, does not appear to have realized the steps necessary to move forward in making positive choices and taking positive steps to improving her life and her children[']s. [Hall] makes statements of wanting to make changes, but fails to follow through with any positive steps. Evidence was provided that [Hall] still on occasion dances for money.
[¶ 45] Hall misconstrues the district court's finding. Maturity was just one of the factors used to determine the moral fitness of both parties and was not equated with morality as Hall argues.

G
[¶ 46] Hall also argues the district court erred in finding factor (g) favored Schumacher. She argues the district court failed to explain how maturity affected the mental or physical fitness of either parent and no determination was made on how this affected S.H.'s interests.
[¶ 47] An actual adverse effect need not be demonstrated before health can be considered in making a custody award. McDowell v. McDowell, 2001 ND 176, ¶ 24, 635 N.W.2d 139. This Court has stated, however, "[w]hile an actual adverse effect need not be demonstrated before health can be considered in making a custody award, more than conjecture and speculation is required." Id. The district court found that Schumacher was favored on this issue only in regard to evidence of maturity at this time. Maturity of the parties can affect their disposition to provide a child with food, clothing, and medical care. Heck v. Reed, 529 N.W.2d 155, 162 (N.D.1995). We conclude the district court's findings are supported in the record and are not clearly erroneous.

H
[¶ 48] Hall also argues the district court erred in finding factor (k) favored Schumacher. She argues the court failed *514 to consider whether S.H.'s interests would be significantly affected. She also argues the court relied too heavily on the custody investigator's finding that her relationship with her boyfriend was adverse to S.H.'s interests. She claims the court erred because it considered her boyfriend's relationship with the children.
[¶ 49] The district court found:
[Schumacher] is favored on this point. The Court from evidence and the custody investigator's report, finds [Hall's] relationship with her boyfriend adverse to the best interests of [S.H.]. Evidence shows the boyfriend is less than helpful with the children, and his non-employment status and his inability to drive does not help in any equation for assisting [Hall] with her children.
[¶ 50] Hall's boyfriend resides in her home. The statute specifically authorizes an inquiry into his interactions and interrelationship with S.H. Furthermore, this Court has concluded, it is appropriate to consider the opinion of the custody investigator, and it is within the district court's discretion to assign the weight given to such evidence. See Hogan v. Hogan, 2003 ND 105, ¶ 10, 665 N.W.2d 672. We conclude the district court's findings were supported by the record and were not clearly erroneous.

I
[¶ 51] Finally, Hall argues the district court erred in finding factor (m) favored Schumacher. She argues the court relied upon her progress with the other factors. The district court considered the parties' progression away from their troubled backgrounds. The court found Schumacher has grown more and has taken advantage of more opportunities to benefit himself and S.H.
[¶ 52] Under factor (m), the court can consider any other factor it deems relevant. N.D.C.C. § 14-09-06.2(1)(m). The district court did not err in considering the parties' progression away from their troubled youths and their dispositions to make appropriate choices for themselves and S.H.
[¶ 53] The district court's findings are supported in the record and enable us to understand the factual basis for the court's decision, and we are not convinced a mistake has been made. We conclude the district court did not err in determining that Schumacher should have custody of S.H.
[¶ 54] We affirm, concluding the district court did not err in finding no domestic violence had occurred and in awarding Schumacher custody of S.H.
[¶ 55] WILLIAM A. NEUMANN and CAROL RONNING KAPSNER, JJ., and EVERETT NELS OLSON, Surrogate Judge, concur.
[¶ 56] The Honorable EVERETT NELS OLSON, Surrogate Judge, sitting in place of MARING, J., disqualified.
VANDE WALLE, Chief Justice, concurring in the result.
[¶ 57] I believe the use, in anger, of an ax to smash a piece of furniture or a computer before a spouse or other family member is, as a matter of law, an intent to inflict fear. Cf. Ryan v. Flemming, 533 N.W.2d 920, 925 (N.D.1995) (Levine, J., concurring specially) (observing that trial court's finding that smashing a flower pot and ripping a phone from the wall were not sufficient to raise presumption under the statute meant the trial court implicitly found outbursts were not intended to inflict fear of imminent physical harm or bodily injury even though there was testimony they did so). The finding of imminent fear should not be solely dependent *515 upon the subjective state of the spouse or family member. Cf. City of Bismarck v. Schoppert, 469 N.W.2d 808, 814 (N.D.1991) (VandeWalle, J., concurring specially) (observing jury need not accept witnesses' characterization of feelings that they would not be incited to violence any more than it would have to accept witnesses' claims that they were incited to an immediate breach of the peace).
[¶ 58] Furthermore, the reason for the statutory presumption is obvious:
Children learn their value systems from their parents, society, and the adults around them. Evidence shows that young men and women in abusive homes are learning to be the next generation of batterers and victims. A great majority of abusive husbands grew up in homes where they witnessed their fathers abuse their mothers.
Children from violent homes learn the value of physical domination. They learn that the bigger and stronger they become, the more control they can exert over others. Children learn from example that they get results with physical violence. They learn that men are strong and that children and women can be victimized.
Ruth Jenny & Kelly Gaines Stoner, Domestic Violence and the North Dakota Best Interests Statute, 72 N.D. L.Rev. 1011, 1019 (1996) (footnotes omitted).
[¶ 59] I am concerned a child learns to emulate an act of violence notwithstanding another family member testifies they were not placed in imminent fear.
[¶ 60] An ax is not a flower pot. However, as this Court noted in Holtz v. Holtz, 1999 ND 105, ¶ 29, 595 N.W.2d 1, in declining to overturn the trial court's finding that the slashing of tires was not domestic violence, "more important ... any presumption against custody arising ... from the incidents of domestic violence was rebutted by the same factors that necessitated the change of custody."
[¶ 61] Here too, as the majority opinion discusses, there is more than clear and convincing evidence that placing custody of the child with Hall is not in the child's best interests. For that reason I concur in the result reached by the majority opinion.
[¶ 62] GERALD W. VANDE WALLE, C.J.